UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------- x
```

SUSAN BORRIELLO, as Administratrix of the      :
Estate of BARTHOLOMEW BORRIELLO and            :
SUSAN BORRIELLO, Individually,                 :
                                               :
                        Plaintiffs,            :
                                               :          MEMORANDUM
              -against-                        :           & ORDER
                                               :          06-CV-2954 (SMG)
THE CITY OF NEW YORK, NEW YORK CITY            :
POLICE DEPARTMENT, STEPHEN CARACAPPA :
(A retired member of the New York City Police  :
Department) and LOUIS EPPOLITO (A retired      :
member of the New York City Police Department),:
                                               :
                        Defendants.            :
                                               :
```
-------------------------------------------------------------- x
```

GOLD, S., *U.S. MAGISTRATE JUDGE:*

## INTRODUCTION

This is a wrongful death action brought by Susan Borriello as Administratrix of the estate

her late husband, Bartholomew Borriello ("Borriello").  On August 14, 2015, the parties entered

into a settlement agreement providing for a payment of $1.5 million to Borriello's estate.

Stipulation of Settlement, Docket Entry 183-5 ¶ 2.  Of this amount, $992,233.10 is payable to the

estate's distributees net of attorney's fees and costs.  Compromise Order, Docket Entry 180.[1]

Susan Borriello ("Susan") was Bartholomew Borriello's second wife.  Susan seeks to

have the settlement proceeds distributed entirely to herself and the two children she had with the

deceased, both of whom were minors at the time of Borriello's death.  Stephanie Borriello

---

[1] The compromise order referred to in the text was originally filed under seal.  However, the net amount to the estate and the other facts recounted in this decision are disclosed in Susan Borriello's publicly filed Affirmation in Opposition to the Application of Stephanie Borriello for Equal Distribution of Proceeds from the Wrongful Death Settlement for the Estate of Bartholomew Borriello, Docket Entry 184.

("Stephanie"), a daughter born to Borriello and his first wife, was already an adult when her father died. Stephanie has filed a motion asking the Court to direct that a portion of the settlement proceeds be distributed to her.

## FACTS

The unusual facts underlying this case are set forth in detail in a Memorandum and Order issued by Senior United States District Judge Raymond J. Dearie on September 30, 2014. Docket Entry 141. For present purposes, it is sufficient to note that Bartholomew Borriello, known as Bobby, was a senior figure in the Gambino organized crime family. *Id*. at 16. Borriello was murdered in the driveway of his home in April 1991 at the direction of Anthony "Gaspipe" Casso, a Lucchese crime family underboss. *Id*. at 12 and 16. Two senior New York City Police Department detectives, Stephen Caracappa and Louis Eppolito, were involved in a corrupt relationship with Casso and participated in several killings at Casso's direction. *Id*. at 1, 12-16.

Casso was the subject of an assassination attempt in 1986. *Id*. at 13. Suspecting that Borriello was involved, Casso directed Caracappa and Eppolito to kill him. *Id*. at 16. The corrupt detectives made an unsuccessful attempt on Borriello's life in 1986. *Id*. In 1991, Burton Kaplan, a mobster who worked for Casso, asked Caracappa to provide him with Borriello's current address. *Id*. As a member of the Police Department's Major Case Squad, Caracappa had access to confidential police information. *Id*. at 12-13. Caracappa provided the requested address, and Borriello was murdered shortly thereafter. *Id*. at 16.

## DISCUSSION

The sole issue now before the Court is how the settlement proceeds should be distributed. As noted above, Susan contends that the proceeds should be distributed entirely to her and her

two children, both of whom were minors when Borriello was killed. Stephanie, although she was already an adult when her father was murdered, asserts that she too should receive a share of the settlement proceeds. Stephanie has filed a motion, supported by her own affirmation and a memorandum of law, seeking one-quarter of the settlement proceeds. Docket Entry 183. Susan has submitted opposition. Docket Entries 184, 185. Stephanie has submitted a reply supported by affidavits from her uncle and aunts and family photographs. Docket Entry 186. Although I inquired of the parties whether they sought an evidentiary hearing, they responded in a joint letter by requesting that I rule on the basis of their submissions. Docket Entries 188, 189.

New York courts generally allocate wrongful death proceeds according to what has come to be known as the "Kaiser" formula. The formula's name is derived from *In re Kaiser's Estate*, 198 Misc. 582 (Sur. Ct. Kings Co. 1950). In *Kaiser*, the Court devised a formula to give effect to the statutory mandate that damages for wrongful death be distributed to the deceased's spouse and issue "in proportion to the pecuniary injuries suffered by them." N.Y. E.P.T.L. § 5-4.4(a)(1). The formula devised in *Kaiser* is based on the number of years a surviving spouse and each child would likely have received support from the deceased. *See, e.g.*, *Application of Adler*, 869 F. Supp. 1021, 1028 (E.D.N.Y. 1994). The formula assumes that, had the deceased lived, a surviving spouse would have received support for the shorter of the deceased's or his or her own life expectancy, and that each child would have received support until he or she reached twenty-one years of age. *Id*.

In her submission, Susan argues that the Kaiser formula should be applied here, and presents the following calculation of the relative shares to which she and her children are entitled under the formula. As noted above, Borriello had two children with Susan who were minors at the time of his death. Susan's older child was eleven years and eight months old when Borriello

was killed, and her younger child was two years and two months old at that time. Susan calculates that Borriello had a life expectancy of thirty-nine years when he was killed. The number of dependency years for these three survivors, then, is 67.2 (39 for Susan, 9.3 for the older child, and 18.9 for the younger child). Accordingly, Susan proposes that the settlement proceeds be distributed by allocating 58% (39/67.2), or $575,495.20 to herself, 14% (9.3/67.2), or $138,912.63 to her older child, and 28% (18.9/67.2), or $277,825.27 to her younger child. Aff. in Opp., Docket Entry 184 at 6-7.[2]

Stephanie was born in 1967 and was twenty-three years old when her father was killed. Aff. of Stephanie Borriello, Docket Entry 183-2, ¶¶ 2, 18. Stephanie had received her college degree and been admitted to New York University's graduate program in social work the year before Borriello was murdered. *Id.* ¶ 12. Stephanie contends that she enjoyed a close relationship with her father and received guidance and emotional and financial support from him until he died. For example, Borriello threw her an elegant party to celebrate her college graduation, gave her expensive gifts, and provided her with $300 or $400 every week. *Id.* ¶¶ 9, 11, 13-15.

Stephanie has not submitted any checks, bank statements or other records to support her claim that her father was supporting her, even as an adult, while he was alive. This is hardly surprising in light of the underlying facts, and I draw no adverse inference against Stephanie as a result. Moreover, Stephanie has submitted affidavits from three aunts and an uncle corroborating her claim that her father guided her and supported her financially until he died. Docket Entries 186-2 through 186-5. Finally, Susan has neither sought an evidentiary hearing nor presented any

---

[2] The figures in the text, which are rounded to a very slight and immaterial extent, are taken directly from Susan's submission in opposition to Stephanie's motion.

evidence directly contradicting Stephanie's version of the facts. I therefore find the facts asserted by Stephanie to be true.

Contrary to the suggestion in Susan's papers, Stephanie's status as an adult at the time of her father's death does not preclude her from receiving a share of the settlement proceeds. First, Stephanie asserts that Borriello was providing her with some amount of financial support up until the time he was killed. Even if that were not the case, Stephanie would not be precluded by her age from receiving a share of the settlement proceeds. "The argument that an adult distributee cannot state a claim for pecuniary injuries based on the loss of a parent's guidance was long ago rejected" by the New York Court of Appeals. *Gonzalez v. New York City Hous. Auth.*, 77 N.Y. 2d 663, 669 (1991). *See also Matter of Estate of Feld*, 153 Misc. 2d 615, 618 (Sur. Ct. New York Co. 1992).

Moreover, several courts have criticized the Kaiser formula and refused to apply it inflexibly. *Adler*, 869 F. Supp. at 1029 (citing cases). These courts have generally noted that the formula works to the disadvantage of children, particularly when, as here, a surviving spouse is relatively young. *See, e.g.*, *id.*; *Matter of Acquafredda*, 189 A.D.2d 504, 511-12 (2d Dep't 1993). Accordingly, *Kaiser* is no longer mechanically applied; rather, as was stated in *Acquafredda*, a court may, in the exercise of its discretion, depart from the formula to reach an equitable result:

> The ends of equity are not always best served by arithmetic yardsticks. Experience has shown that there may be variations and factors calling for equitable adjustments to relax an otherwise inelastic application of *Kaiser*. Its "years of dependency" formula is not brittle, but malleable, and not beyond the exercise of the court's sound discretion. No doubt the *Kaiser* allocation may be employed often, with no resulting imbalance. The history of the process reveals as much. Nevertheless, there are other instances, as in the case before us and the numerous cases that we have cited, in which departure from *Kaiser* is within the boundaries of an informed discretion.

189 A.D. 2d at 517. *See also Adler*, 869 F. Supp. at 1029; *Feld*, 153 Misc. 2d at 618-20.

The undisputed evidence in this case reveals that Stephanie continued to receive financial support and guidance from Borriello even after reaching adulthood.  As a matter of equity, then, it is appropriate for Stephanie to receive a share of the settlement proceeds.  On the other hand, Stephanie was a graduate student in a professional program at a prestigious university by the time her father died, and would likely have soon been in a position to support herself comfortably.  Accordingly, there is no reason to doubt that, had he lived, Borriello would have devoted the substantial majority of his income to supporting his wife and minor children rather than his adult daughter.

For these reasons, I conclude that the share of the settlement proceeds awarded to Stephanie should be smaller than the shares of Susan and her children.  I therefore award Stephanie 8% of the proceeds of the settlement in this action, or $79,378.65.  Because courts recognize that application of the Kaiser formula works in favor of young surviving spouses, and because the amount allocated to Susan under the Kaiser formula far exceeds the amounts allocated to her children, I conclude that Stephanie's share of the settlement proceeds should come out of Susan's Kaiser formula share and not the shares of Susan's children.  Finally, because Susan and her children do not challenge the calculation of their relative shares of the settlement proceeds, I do not consider whether those relative shares should be adjusted, except insofar as I take only from Susan's share to fund Stephanie's award.

**CONCLUSION**

For the reasons stated above, the final allocation of the net proceeds of the settlement is as follows:

| | | |
|---|---|---|
| Susan Borriello | 50% | $496,116.55 |
| Stephanie Borriello | 8% | $79,378.65 |
| Patrick Borriello | 14% | $138,912.63 |
| Bobby Borriello, Jr. | 28% | $277,825.27 |
| TOTAL | | $992,233.10 |

**SO ORDERED.**

_____/s/_____
STEVEN M. GOLD
United States Magistrate Judge

Brooklyn, New York
November 24, 2015

U:\smg current docs\Borriello 112415.docx